UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA C. LETT,

    Plaintiff,

v.                                                        Case No: 2:16-cv-549-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause comes before the Court on Plaintiff Barbara C. Lett's Complaint (Doc. 1) filed on July 11, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.[1]  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On January 4, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits with an alleged onset date of December 16, 2010.  (Tr. at 253).  Plaintiff's application was denied initially on May 2, 2012 and upon reconsideration on August 6, 2012.  (Tr. at 139-40).  A video hearing was held before Administrative Law Judge ("ALJ") Roxanne Fuller on January 6, 2015.  (Tr. at 97-127).  The ALJ issued an unfavorable decision on April 3, 2015.  (Tr. at 76-96).  The ALJ found Plaintiff not to be under a disability from December 16, 2010 through the date of the decision.  (Tr. at 90).

On May 5, 2016, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-5).  Plaintiff filed a Complaint (Doc. 1) in this Court on July 11, 2016.  Defendant filed an Answer (Doc. 18) on February 14, 2017.  The parties filed a memoranda in support.  (Docs. 27-28).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 21).  This case is ripe for review.

---

[1] The Court notes that the Social Security regulations were recently revised.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Unless otherwise specified, the Court refers to the regulations in effect at the time of the Administrative Law Judge's decision.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (Tr. at 81). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 16, 2010, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "neuropathy, hip fracture with replacement surgery, history of foot fracture, degenerative disc disease of the spine, and arthritis." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. at 83).

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Based on the evidence, the ALJ determined that Plaintiff had the RFC to perform "sedentary work" except that Plaintiff can:

> occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, crouch, kneel, crawl; frequently handle objects, that is gross manipulation with both hands; frequently finger, that is fine manipulation with both hands; have occasional exposure to moving mechanical parts; occasionally operate a motor vehicle; and have occasional exposure to unprotected heights.

(Tr. at 84).

At step four, the ALJ determined that Plaintiff "is capable of performing past relevant work as an administrative assistant and caseworker." (Tr. at 90). The ALJ found that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*). Specifically, in comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff was able to perform it as actually and generally performed. (*Id.*). In making this finding, the ALJ noted the vocational expert's ("VE") testimony that Plaintiff's past work experience was that of an administrative assistant and a caseworker. (*Id.*). The VE testified that "those jobs generally occur at the sedentary exertion level and that the claimant specifically performed the work at that level." (*Id.*). The VE further testified that a hypothetical person with Plaintiff's RFC "could perform the work both as [Plaintiff] specifically did it and as the jobs are generally done in the national economy." (*Id.*). Pursuant to Social Security Ruling 00-4p, the ALJ found Plaintiff's work history and the Dictionary of Occupational Titles to be consistent with the VE's testimony. (*Id.*).

Because the ALJ found Plaintiff could perform past relevant work at step four, the ALJ did not proceed to make findings at step five. (*See id.*). Accordingly, the ALJ concluded that Plaintiff was not under a disability from December 16, 2010 through the date of decision. (*Id.*).

4

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises two issues on appeal. First, Plaintiff argues that "[t]he Commissioner improperly rejected the opinion of the state agency examining and nonexamining consultants as far as Ms. Lett's mental limitations." (Doc. 27 at 1). Second, Plaintiff argues that "[t]he Commissioner failed to articulate good cause for not adopting the opinions of Dr. Mufdi

regarding Ms. Lett's limitations and the impact of the side effects from her medications." (*Id.*). The Court evaluates these issues in turn below.

### A. Legal Standards

As an initial matter, the Court notes that both issues raised by Plaintiff deal with the weight afforded to various medical opinions. The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When evaluating a medical opinion, the ALJ considers various factor including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct

application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

> **B.** **The ALJ's Review of the Opinion Evidence**
>
> **1.** **Michael Harvan, Ph.D.**

Plaintiff first takes issue with the ALJ's assessment of Dr. Harvan's opinion.  Dr. Harvan conducted a one-time psychological evaluation of Plaintiff on April 25, 2012.  (Tr. at 501-508).  Plaintiff argues that the ALJ erred in assigning little weight to Dr. Harvan's opinion because "she missed important observations that Dr. Harvan made and confused the nature of the findings."  (Doc. 27 at 13).  Specifically, Plaintiff argues that Dr. Harvan opined that her "excessive verbalization and lack of focus, and lack of knowledge regarding her excessive verbalization, would cause her difficulty in a work setting."  (*Id.* (citing Tr. at 508)).  Contrary to the ALJ's decision, Plaintiff argues that Dr. Harvan's opinion showed that Plaintiff's issues were not her ability to understand complex tasks but instead were associated with her concentration, persistence, and pace.  (*See id.*).  Furthermore, Plaintiff contends that her self-report was

consistent with the observed signs during Dr. Harvan's examination. (*Id.*). Thus, Plaintiff contends that "an employee who is not focused and talks excessively to customers or clients or coworkers about tangential items that may or may not be relevant would have difficulty with pace and completing work projects during an eight hour day" and that "[t]his would not be a person would be successful in a skilled occupation where focus is critical." (*Id.* at 13-14).

Furthermore, Plaintiff argues that, contrary to the ALJ's decision, "[t]he types of limitations identified by Dr. Harvan would not prevent her ability to get along with others in a social setting with family and friends." (*Id.* at 14). Plaintiff argues that "[t]he nature of her limitations would not be a problem when going to the food store and standing in line to pay for food when she is a customer and being served by the food store employee" or "doing basic chores around the house sporadically." (*Id.*). Plaintiff argues these activities are "not the same as having to work for eight hours a day, staying focused and not wasting time talking to coworkers and customers about irrelevant things for excessive periods of time" nor are they "the kinds of limitations that would be seen by the activities described by the ALJ as a basis for discrediting Dr. Harvan's opinions." (*Id.*). Plaintiff argues that these characteristics – in addition to her short term memory problems and difficulty staying focused and responsive – would not be compatible with a skilled occupation. (*Id.*). Plaintiff argues that "[i]f she were limited to unskilled work, the ALJ would have had to find her disabled under the sedentary work grids as she could not perform her past work that was skilled." (*Id.*).

Defendant disagrees, arguing that the ALJ properly gave little weight to Dr. Harvan's opinions. (*See* Doc. 28 at 6-8). Specifically, Defendant argues that the ALJ properly discounted the opinion because Dr. Harvan was only a one-time examiner and because Dr. Harvan's examination did not support his conclusions. (*Id.* at 7-8). Additionally, Defendant argues that

8

the ALJ properly noted that "Plaintiff's treatment records showed benign mental status examinations with no similar difficulties noted elsewhere" and that "Plaintiff's treatment was conservative, with medications but no specialized treatment." (*Id.* at 8).

Upon review of the medical evidence of record, the Court cannot find that the ALJ erred as to her review of Dr. Harvan's medical opinion. Instead, the Court finds that the ALJ stated specific reasons supported by substantial evidence for discounting Dr. Harvan's opinion. The Court addresses the ALJ's stated reasons for discounting Dr. Harvan's opinion in turn below.

First, the ALJ discounted Dr. Harvan's opinion because the evidence from his examination did not support his conclusions. (Tr. at 88). As noted above, supportability is one factor ALJs consider in reviewing opinion evidence. *See Denomme*, 518 F. App'x at 877. Here, the ALJ cited substantial evidence of record in making this finding.

Specifically, the ALJ noted Dr. Harvan's opinion that Plaintiff had no limitations in carrying out instructions, had "significant" delays in performing multi-step tasks, was "not likely to have difficulty" responding to supervision and coworkers, and would have "some difficulty" dealing with work pressures. (Tr. at 88). Nevertheless, as to performing multistep tasks, the ALJ found Dr. Harvan's opinion to be insufficiently supported because Plaintiff "was generally able to focus and attend to tasks during the consultative examination" and because her "memory was 'good.'" (Tr. at 88 (citing Tr. at 505-506)). Additionally, the ALJ cited Plaintiff's statements indicating that she performed housework with the help of her husband. (Tr. at 88 (citing Tr. at 506)). Moreover, the ALJ noted that Plaintiff's intellectual functioning was opined to be in the average to high average range. (Tr. at 88 (citing Tr. at 506)).

Similarly, as to Plaintiff's ability to respond to stress and social interaction, the ALJ cited the fact that Plaintiff could shop and enjoyed spending time with her grandchildren as being

9

inconsistent with Dr. Harvan's conclusions. (Tr. at 88 (citing Tr. at 505)). The ALJ also cited Plaintiff's apparent ability "to interact appropriately with treatment providers" and the fact that Plaintiff "had at least two close friends." (Tr. at 88 (citing Tr. at 504)).

On these points, although Plaintiff argues that the ALJ's findings are inconsistent with the "nature of her limitations," the Court finds that the ALJ cited substantial contrary evidence of record in coming to her conclusion that the evidence pointed "to much lesser mental limitations than the consultative examiner indicated." (Tr. at 88). As stated above, when the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result. *See Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358. Here, the Court cannot find that the ALJ was incorrect or that the ALJ failed to support her decision with substantial evidence of record.

The second reason the ALJ gave for discounting Dr. Harvan's opinion was that Dr. Harvan was only a one-time consultative examiner. (Tr. at 88). On this point, the Eleventh Circuit has stated that "[t]he ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." *Denomme*, 518 F. App'x at 877 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Here, because Dr. Harvan was only a one-time consultative examiner and was not a treating physician, the ALJ was not wrong to discount Dr. Harvan's opinion on this basis. *See id.*

The ALJ's final reason for discounting Dr. Harvan's opinion is her observation that the rest of Plaintiff's "treatment points to very benign mental status signs and conservative treatment." (Tr. at 88 (citing Tr. at 395)). On this point, Plaintiff did not explain why the ALJ's observations in this regard were not proper reasons to discount Dr. Harvan's opinion. The Court,

therefore, finds that Plaintiff has not met her burden of persuasion in rebutting this reason given by the ALJ for discounting Dr. Harvan's opinion. *See Bowen*, 482 U.S. at 146 n.5.

In sum, the Court finds that the ALJ stated specific reasons supported by substantial evidence for discounting Dr. Harvan's opinion. The Court, therefore, affirms the decision of the Commissioner on this issue.

### 2. Linda O'Neil, Ph.D.

Plaintiff next argues that the ALJ erred in her consideration of Dr. Linda O'Neil's opinion. (Doc. 27 at 14). Dr. O'Neil is a state agency consultant who reviewed Plaintiff's evidence on reconsideration. (Tr. at 150). Plaintiff argues that the ALJ improperly rejected Dr. O'Neil's opinion for the opinion of the state agency consultant – Dr. Karla Voyten, Ph.D. – who reviewed Plaintiff's evidence initially. (Doc. 27 at 14). Specifically, Plaintiff argues that on reconsideration, Dr. O'Neil "actually *analyzed* the evidence, as opposed to Dr. Voyten who did not include any analysis in her report." (*Id.* at 15 (emphasis in original; citing Tr. at 149-50)). Plaintiff further argues that the ALJ rejected Dr. O'Neil's opinion "primarily based on statements taken out of context from Dr. Harvan's report and then stated that if [Plaintiff] was able to give enough information to Dr. Harvan, she did not have communication issues." (*Id.*). Plaintiff argues that this reasoning is circular. (*Id.*).

Defendant disagrees, arguing that the ALJ properly discounted Dr. O'Neil's opinion. (Doc. 28 at 8-10). Defendant maintains that the ALJ properly found that the evidence supported Dr. Voyten's opinion but did not support Dr. O'Neil's opinion. (*Id.* at 8). In support, Defendant notes that Dr. Voyten not only reviewed Dr. Harvan's opinion but also nonetheless found Plaintiff's mental impairment not to be severe. (*Id.* at 9). Additionally, Defendant argues, as

above, that "Dr. Harvan's opinions were without substantial support in the record" such that the ALJ did not err in her review of Dr. O'Neil's opinion either. (*Id.*).

Defendant further argues that, "[w]hile Plaintiff contends that Dr. O'Neil reviewed 'updated reports' filed with the agency, Dr. O'Neil noted that the 'updated notes focused on physical [impairments].'" (*Id.* (alteration in original; citing Tr. at 150)). In any event, Defendant contends that "the ALJ reviewed all of the evidence in the record and still concluded that it did not support Dr. O'Neil's opinion." (*Id.*). Moreover, Defendant argues that Plaintiff has not "identified any records Dr. O'Neil had access to, which Dr. Voyten did not, that purport to show that Dr. O'Neil's opinion was entitled to greater weight than Dr. Voyten's." (*Id.*). Finally, Defendant points out that "even Dr. O'Neil acknowledged that Plaintiff's psychological issues were 'clearly not substantial.'" (*Id.* at 10 (citing Tr. at 150)). Thus, Defendant contends that "Plaintiff has failed to show that the ALJ should have given greater weight to Dr. O'Neil's opinion than Dr. Voyten's." (*Id.*).

Upon consideration, the Court cannot find that the ALJ erred in her review of this opinion evidence. Instead, the Court finds that the ALJ stated specific reasons supported by substantial evidence for discounting Dr. O'Neil's opinion and crediting Dr. Voyten's opinion. In coming to this conclusion, the Court notes that the ALJ cited the same evidence to discount Dr. O'Neil's opinion that she did to discount Dr. Harvan's opinion. (*Compare* Tr. at 87, *with* Tr. at 88). Specifically, the ALJ cited Plaintiff's conservative treatment for her mental impairments, Plaintiff's activities, and the results from other psychological evaluations. (Tr. at 88). In addition, the ALJ cited the fact that Plaintiff had no episodes of decompensation. (*Id.*). As the Court found above, these citations to the record provide substantial evidence in support of the ALJ's conclusion that Plaintiff had no more than mild mental limitations. (*See* Tr. at 87).

12

Accordingly, the Court finds the ALJ was not wrong to credit the opinion of Dr. Voyten over that of Dr. O'Neil.

As a final matter, the Court cannot help but note that even Dr. O'Neil stated that Plaintiff's psychological issues were "clearly not substantial." (Tr. at 150). Moreover, the Court notes that the ALJ was under no obligation to credit Dr. O'Neil's opinion given that she only conducted a single examination and was not a treating provider. *See Denomme*, 518 F. App'x at 877 (citing *McSwain*, 814 F.2d at 619). Thus, the Court finds that the ALJ was not wrong to discount Dr. O'Neil's opinion. The Court, therefore, affirms on this issue.

### 3. Emilio Mufdi, M.D.

Finally, the Court addresses Plaintiff's contention that the ALJ erred in her review of the opinion of Dr. Emilio Mufdi, M.D.

Plaintiff argues that the ALJ failed to articulate good cause for not adopting the opinions of Dr. Mufdi regarding Plaintiff's limitations and the impact of the side effects from her medications. (Doc. 27 at 18). Specifically, Plaintiff argues that, in discounting Dr. Mufdi's opinion, the ALJ "picked and chose" the portions of Dr. Harvan's opinion that supported Plaintiff "ma[king] it sound like all memory testing was normal." (*Id.* at 23). Plaintiff argues that Dr. Harvan did not agree with the ALJ's opinion because he did not think that Plaintiff would be able to return to work based on her mental status. (*Id.*). Plaintiff further argues that "[t]he ALJ's rationale for rejecting Dr. Mufdi's opinions as far as mental limitations was not reasonable or consistent with the actual statements of Dr. Harvan which had to do with her capacity in a work type setting." (*Id.*). Moreover, Plaintiff argues that her "statements regarding her side effects are consistent with Dr. Harvan's testing and observations as well as Dr. Mufdi's opinions." (*Id.*).

13

In addition, Plaintiff argues that "[t]he ALJ discounted Dr. Mufdi's statements regarding [Plaintiff's] side effects and also discounted [Plaintiff's] testimony regarding side effects." (*Id.* at 24). Contrary to the ALJ's decision, Plaintiff argues that her medication resulted in significant side effects, consistent with those identified by Dr. Mufdi and by Plaintiff's own testimony. (*Id.*). Plaintiff further argues that the Food and Drug Administration's website shows that her statements and Dr. Mufdi's statements regarding her side effects are consistent with the listed side effects. (*Id.*). Finally, Plaintiff argues that the ALJ incorrectly claimed that the record does not contain any medication changes. (*Id.*). Plaintiff argues that her "medications were adjusted but ultimately were increased because her pain increased" and that "[h]er side effects did not go away." (*Id.*).

In response, Defendant argues that the ALJ provided good cause to discount Dr. Mufdi's opinions. (Doc. 28 at 10-13). Specifically, Defendant notes that the ALJ gave Dr. Mufdi's opinion little weight because it was disproportionate to the evidence. (*Id.* (citing Tr. at 88)). Defendant argues that the ALJ correctly "noted that the other evidence of record did not support Dr. Mufdi's opinion." (*Id.* (citing Tr. at 88)).

For instance, Defendant argues that while Dr. Mufdi indicated that "Plaintiff had a wide range of profound mental functioning losses and social limitations because of a combination of mental impairments and the side effects of medication, these limitations were not supported by Dr. Harvan's examination." (*Id.* (citing Tr. at 88)).

As to Plaintiff's physical limitations, Defendant argues that the evidence cited by the ALJ "did not support the mental and physical limitations described by Dr. Mufdi." (*Id.* at 11-12 (citing Tr. at 89)).

As to the side effects from the medications, Defendant argues that "Dr. Mufdi merely checked a box indicating that 'drowsiness/sedation' were side effects from Plaintiff's medications—which Dr. Mufdi failed to identify—that 'may have implications for working.'" (*Id.* at 12 (citing Tr. at 549)). Defendant argues that "Dr. Mufdi's opinion, inasmuch as it can be read as assessing disabling side effects from medication, simply was not supported by the record, including Dr. Harvan's examination, because Plaintiff has failed to identify any instance when she complained of these purported side effects." (*Id.* (citations omitted)). Moreover, Defendant argues that to the extent Plaintiff cites "her own statements at the hearing" in support of her alleged side effects from her medications, "the ALJ properly did not fully credit these allegations, including dizziness, noting that they were not supported by the record." (*Id.* (citing Tr. at 85)). In any event, Defendant argues that "[t]he ALJ accounted for Plaintiff's use of medications by limiting her to only occasional exposure to moving mechanical parts, operation of motor vehicles, and exposure to unprotected heights, but found that the record did not support greater limitation." (*Id* (citing Tr. at 87)).

In sum, Defendant argues that "[t]he ALJ properly considered the relevant evidence and properly performed her duty as the trier of fact of weighing and resolving any conflicts in the evidence." (*Id.* at 13 (citations omitted)). Thus, Defendant argues that the Commissioner's decision should be affirmed. (*Id.*).

As noted above, good cause exists to discount a treating physician's opinion when (1) the opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. In this case, the Court finds that the ALJ provided good cause for discounting Dr.

Mufdi's opinion because Dr. Mufdi's opinion was not bolstered by the evidence and because the evidence supported a contrary finding. *See id.*

Specifically, Dr. Mufdi gave an opinion on July 8, 2013 describing Plaintiff as having a large number of mental and physical impairments. (Tr. at 548-51). The ALJ gave Dr. Mufdi's opinion little weight because the limitations described were "disproportional to the evidence." (Tr. at 88). Here, the Court finds that the ALJ cited substantial evidence of record showing that the limitations opined by Dr. Mufdi were disproportional to the evidence of record.

For example, as to Plaintiff's mental impairments, the ALJ noted Dr. Mufdi's opinion that Plaintiff has significant mental functioning losses due to a combination of mental impairments and the side effects of her medication. (Tr. at 88). Nevertheless, the ALJ cited other evidence of record showing that Plaintiff "was generally able to focus and attend to tasks" and that her memory was "good." (Tr. at 88 (citing Tr. at 505-506)). Similarly, the ALJ cited Plaintiff's reports that she did housework with the help of her husband. (Tr. at 88 (citing Tr. at 504-506)). The ALJ also noted that Plaintiff's intellectual functioning was opined to be in the average to high average range. (Tr. at 88 (citing Tr. at 504-506)). Likewise, although Dr. Mufdi opined that Plaintiff had extensive social limitations, the ALJ nonetheless noted that Plaintiff could shop, leave home, and enjoyed spending time with her grandchildren. (Tr. at 88 (citing Tr. at 504-506)). The ALJ further noted that Plaintiff had two close friends and could otherwise interact appropriately. (Tr. at 88 (citing Tr. at 504, 552-71)). Furthermore, the ALJ specifically pointed out that Plaintiff could do all of these things despite her use of medications. (Tr. at 88 (citations omitted)). The Court finds that these citations provide substantial evidence against the significant mental limitations opined by Dr. Mufdi.

Similarly, although Dr. Mufdi found that Plaintiff had significant physical limitations, the ALJ cited other evidence of record showing that Plaintiff's limitations were not as severe as Dr. Mufdi opined. For instance, the ALJ cited a consultative examination showing that Plaintiff could stand, walk, and move her extremities normally. (Tr. at 88 (citing Tr. at 539-42)). The consultative examination also showed Plaintiff had intact strength, dexterity, and range of motion. (Tr. at 88 (citing Tr. at 539-42)). Further, while the ALJ acknowledged that Plaintiff had suffered a fractured hip and had an abnormal gait, the ALJ nonetheless cited evidence showing that Plaintiff had improved with home exercise and physical therapy. (Tr. at 88 (citing Tr. at 586-87, 589-92)). The Court finds these citations provide substantial evidence against Dr. Mufdi's opined limitations.

In light of the foregoing, the Court finds that the ALJ's citations to the record provide substantial evidence in support of her conclusion that the profound mental and physical limitations opined by Dr. Mufdi are disproportional to the evidence of record. The Court specifically credits the ALJ's finding that, despite Plaintiff's use of medications, her mental and physical limitations were not as severe as alleged. Thus, there is no indication that the ALJ failed to properly consider Dr. Mufdi's opinion regarding Plaintiff's limitations or the side effects of Plaintiff's medications. Furthermore, to the extent that Plaintiff credits her own testimony in support of her arguments, the Court notes that the ALJ found Plaintiff's testimony not entirely credible, (Tr. at 85), and Plaintiff did not argue that the ALJ erred in this regard. In sum, while Plaintiff argues that other evidence would support an alternative finding, the ALJ's citations to relevant evidence of record provide more than a scintilla of evidence in support of her conclusions. Thus, because Dr. Mufdi's opinion was not bolstered by the evidence and

because the evidence supports a contrary finding, the ALJ provided good cause to discount the opinion. *See Phillips*, 357 F.3d at 1240-41.

As a final matter, the Court notes that Plaintiff raised an issue in passing that the ALJ did not state the weight given to Dr. Mufdi's opinion from June 2012. (Doc. 27 at 19). Upon review, the record shows that Dr. Mufdi completed an Application for Disabled Person Parking Permit for Plaintiff, dated June 26, 2012, where he checked a box indicating that Plaintiff has the:

> Inability to walk without the use of or assistance from a brace, cane, crutch, prosthetic device, or other assistive device, or without assistance of another person. If the assistive device significantly restores the person's ability to walk to the extent that the person can walk without severe limitation, the person is not eligible for the exemption parking permit.

(Tr. at 531).

On this point, although ALJs are required to state with particularity the weight given to different medical opinions and the reasons therefor, *Winschel*, 631 F.3d at 1179, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings, *Denomme*, 518 F. App'x at 877-78. Here, any potential error is harmless because the Court has no basis to conclude that the ALJ's ultimate decision – that Plaintiff was not disabled – would have been different had the ALJ assigned a weight to the referenced opinion. *See id.* Moreover, the ALJ's citations to the record above also serve to discount the limitations opined by Dr. Mufdi in Plaintiff's parking application. The Court, therefore, declines to reverse on this ground.

In sum, good cause existed to discount Dr. Mufdi's opinion. The Court, therefore, affirms the ALJ's decision on this ground.

**III.    Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 18, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties